Our fourth case for this morning is United States v. Fuller, Mr. Gable. If it pleases the Court, my name is Thomas Gable. I'm an assistant federal public defender from the Southern District of Illinois. The question for the Court today is whether or not the District Court committed procedural error by failing to consider or explain her rejection of the appellant's non-starter argument in support of a guideline sentence. The two points being the appellant's sincere belief that he had committed the incident offense to protect himself from harm, and the second one, the administrative consequences of his offense, particularly the time he spent in solitary confinement, were so punitive that a below-the-guide guideline sentence could have been justified. Well, the problem, a problem, which I believe the government raises, is that these kind of prison culture arguments have been rejected by this Court and other courts around the country. We're not outliers in this respect, because the alternative is just unacceptable. Just saying, you know, let people swing these socks filled with rocks around, or let people solve their own problems with whatever violence they want. We understand that prisons have probably their own internal rules and all of that, but the Bureau of Prisons can't run them that way. I understand, Your Honor. We're not saying that it's an affirmative defense, because it's not a defense. But his state of mind could have been used in mitigation about what the actual sentence should be. It would be a 3553A factor. Why is it mitigating, though? Why should there be a rule of law that says if a prisoner feels that he needs to take matters into his own hands, that qualifies him for a somewhat lower sentence? It may or may not be, but it's a point that the judge has to address once we raise it. It's one of the issues, Your Honor. Only if it's considered a serious enough point and a non-stock argument and the like. But why wasn't the judge entitled to look at this court's jurisprudence and say this argument is just not one that is a sound argument? She absolutely is, but she did not say that. She said she couldn't consider it, which is a different argument. I'm not sure she can consider it. As a matter of law, if you're saying that there's any element of excuse from this prison culture is awful argument, I don't know where you find law that supports that. Well, Your Honor, we all know that the culture in prison is different than the culture in the streets. We know that BOP, Bureau of Prisons, instructs its guards, the first thing they do is take care of themselves, and then they worry about the prisoners. There have been cases where prisoners were murdered while they waited to get enough guards together to take care of the fight that was going on. The question becomes, what's the man's state of mind? And that's what the real issue is on that point. You know, I'm not saying that she had to say, oh, we'll give you a lesser sentence in any way, shape, or form, but she had to address the argument. Well, but I don't understand that then, because she does actually have a pretty thorough discussion of the arguments, and she repeats on a number of occasions, you know, I understand this, but I've got to come up first with the right guideline, calculation, I know I have 3553A discretion. I mean, she says all of these things, and she's also saying that she's not inclined to revisit what BOP is doing in terms of administrative segregation or the other internal prison consequences. She keeps saying she wants to stay in her lane, but, you know, I don't see why a district judge is disqualified from taking that view. I think that if she would not have also said that she could not take it into consideration, that I wouldn't be here. But I think the terms she used at different times made it quite clear that she believed that she could not consider it. I think she could consider it, but she could reject it. Well, she said she wouldn't relitigate any administrative actions or decisions by BOP. That's correct, Your Honor. Most of that, I believe, was looking at the solitary confinement issue, where she agreed that she believed 10 months in solitary confinement was torture. And I do not argue that BOP, Bureau of Prisons, can make their own regulations. But we can consider what type of administrative punishments they're doing when we decide what punishment the defendant needs to have. You know, 10 months in solitary is a long time, and you're not necessarily altogether sane when you get done with it. So what she says, though, after she says, you know, that she's not going to revisit what BOP is doing, she says, my obligation is to impose a sentence in this case, sufficient but not greater than necessary, given some factors, that's what I intend to do. And she's saying that she's going to focus on what you did in April of 2015. Well, I agree with you there, Your Honor. But she keeps on coming back to the fact that she cannot consider what the administrative punishments were. And I do believe that you can consider it. You don't have to relitigate it because, obviously, it's done. There's nothing to litigate. But you have to consider what was done to the person because of his actions, whether or not you consider it to be a reason to lessen the punishment that you're about to give him for what he did. So if she had just said, BOP has its concerns, and it implements them through administrative sanctions. I have my concerns, and I implement them through federal sentencing, would that have been enough? No, I think she has to. That's pretty obvious. I think that she would have to say, I've considered them, and they do not warrant a reduced sentence. Can you find any cases where anyone has said, well, you've already served 12 months in segregation, and I'm going to give you a lower sentence? No, Your Honor. I have not. Okay. All right. But that's what the basic argument is. The basic argument is, do people have to consider, do trial judges have to consider the man's state of mind and the administrative punishment? And I'm not saying they have to give it any reduction because of it, but I believe they have to consider it. Your Honor, I think you all understand the issue here, so I'll sit down. All right. You may save the rest of your time. That's fine. Thank you. Mr. Kutchin. Your Honors, may it please the Court, my name is Jim Kutchin. I represent the government in this case. The problem with the appellant's argument, really there are multiple problems. The first identified by the court being that no court has accepted this as certainly a defense and certainly that I could find as a mitigating factor an argument that the inmate felt that they had to take matters into their own hand and could on their own decide, because I don't want to be labeled a snitch by going to the guards, that I can do this on my own to alleviate them from that responsibility. The defendant certainly has presented no law to that effect. But in addition, the problem is also that the defendant did not support his argument with any evidence before the district court. Certainly, the government believes that the district judge in this case did indicate, despite this court's repeated disfavored view of that kind of an argument, she never indicated that she would under no circumstances consider it. She said over and over again that you haven't presented me with any evidence that there was any kind of provocation on the part of the victim in this case. So I think that is an additional problem that that argument presents. The same would apply to the second argument about- Yes, Your Honor. The video showed exactly as laid out in the brief that at about 7.58 p.m., the victim was sitting at a table by himself with a pair of bulky headphones on. You can see the defendant in this case, Mr. Fuller, circle around the common area in the prison unit. He pauses over by the wall, makes sure that no one's around looking. Then he crosses through several other inmates to get to Mr. Dixon, pulls out a sock filled with two large concrete chunks or rocks, and swings it and hits him on the left side of the head right into the headphone. They shatter. They go across the room. He has a deep laceration across his face or side of his face, and all indications would be that the injury would have been much more severe had he not. All that goes to show, if I understand maybe where the court is going with that, that there simply was no kind of immediate threat that would even arguably bring within this course jurisprudence on when an inmate could rely on that kind of an argument, certainly for a defense, and I think the same would certainly apply to mitigation as well. The lack of evidentiary support is also a failure on the defendant's part with regard to his arguments regarding solitary confinement. All the defendant did in support of that was to present, I believe it was a law journal article, some kind of article by someone complaining about solitary confinement. He never presented any evidence that he was subjected to what would be considered solitary confinement under the conditions of the Marion Segregation Unit where disciplinary sanctions. So suppose somebody was involved in some incident at a prison that was the kind of thing like this that would support a separate prosecution, but in addition, maybe the prison revoked six months of good time credit, something like that. Would you say that the district court in the sentencing proceeding for the independent prosecution is banned from taking into account the loss of good time credit or should comment on whether or how that was taken into account? Well, Your Honor, assuming that that argument was supported with sufficient factual evidence. Again, in this case, there was no evidence of what disciplinary segregations were imposed. Right. Well, I'm trying to give you a concrete example. You know, you lost six months of good time. So, of course, that affects the length of time you stay in prison on the first offense too. I understand, Your Honor. And the government's position would be no, that that would not be an appropriate factor for the district court to consider. And in our brief, we cited a third circuit case, United States versus Newby, in which it was, of course, a guideline case. But the argument there was that the court that was addressing that the court should have varied from the guideline or departed from the guidelines. And the reasoning laid out by that court, why there are separate harms being addressed by the two, by the administrative sanctions on the one hand and the criminal sanctions on the other, that the interest be served by imposing punishments of both kinds are not the same and that reducing one on account of the other would not serve those legitimate separate interests that underlie each. So, Your Honor, I would, for all of the reasons that we cited here today, as well as what are set forth in our brief, we would ask the court to affirm the sentence of the district court. Unless there are no further questions, we'll rest on our brief. Apparently not. Thank you very much. Thank you, Your Honor. Mr. Gable? Very quickly, Your Honor. The case that was cited by the prosecutor just now, U.S. versus Newby, was a pre-Booker case. And this is a post-Booker case. I think there's a difference right there. And we believe that administrative sanctions can be considered. So your basic position is everything's on the table, so why not administrative sanctions, as I understand it? That's correct, Your Honor. The other thing that we believe is that my client's allocution was, in fact, believed by the judge. She said she believed what he was saying about the state of mind. And there's no saying, there's nowhere that requires you to put on direct evidence. The allocution, if believed by the judge, should be enough for her to make a decision whether or not she wants to stay within the guidelines. But we know that she, given the fact that we know that she believed it, we also know that it didn't seem to influence her sentencing decision as much as he would have liked. Well, you've got the will and the guidelines, Your Honor. Okay. But that concludes my argument. Okay, thank you very much. Thanks to both counsel. We'll take the case under advisement.